154 N.J. Super. 555 (1977)
382 A.2d 53
IRENE THOMSON AND DIVISION ON CIVIL RIGHTS, DEPARTMENT OF LAW AND PUBLIC SAFETY, STATE OF NEW JERSEY, RESPONDENTS,
v.
SANBORN'S MOTOR EXPRESS, INC., APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 3, 1977.
Decided December 22, 1977.
*556 Before Judges CONFORD, MICHELS and PRESSLER.
Mr. Herbert Burstein of the New York Bar argued the cause for appellant (Messrs. Russo, Tumulty and Nester, *557 attorneys; Mr. Joseph Nester, of counsel; Mr. James F. Maher of the New York Bar, on the brief).
Mr. Joseph M. Gorrell, Deputy Attorney General, argued the cause in behalf of respondents (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mrs. Erminie L. Conley, Deputy Attorney General, of counsel).
The opinion of the court was delivered by MICHELS, J.A.D.
We must decide whether an employer's policy prohibiting the contemporaneous full-time employment of relatives in the same department or terminal as applied to spouses is violative of the proscription against "discrimination because of marital status" set forth in the Law Against Discrimination, N.J.S.A. 10:5-1 et seq. The Director of the Division on Civil Rights (Division) found such a violation. We disagree and reverse.
The important facts may be summarized as follows. On May 25, 1972 respondent Irene Thomson (Thomson) applied to appellant Sanborn's Motor Express, Inc. (Sanborn), an interstate motor freight common carrier, for a full-time job as a general office clerk at Sanborn's truck terminal in Edison, New Jersey. The terminal manager informed Thomson that the position had already been filled, but that he would keep her in mind if another full-time position became available. He advised her that while there was a part-time billing clerk's position available, the company preferred a man for such night work. Thomson recommended her husband, and the terminal manager suggested that he apply immediately. Mr. Thomson was hired the next day as a regular part-time billing clerk on the night shift, working generally from 5 P.M. to 9 P.M. In November 1972, while Mr. Thomson was so employed, an opening developed for a part-time billing clerk on the day shift. The terminal manager offered the position to Thomson. He also told her that she would be given a full-time position when Sanborn opened another terminal in Edison and business improved. She *558 accepted the offer on that basis and was hired on November 6, 1972 as a regular part-time billing clerk working from 12 M. to 4 P.M. She was employed by Sanborn until September 4, 1973. She was discharged because of the company's policy against relatives, including spouses, working at the same terminal.[1]
*559 On October 16, 1973 Thomson filed a complaint with the Division charging Sanborn with unlawful discrimination for terminating her employment because of her marital status in violation of the Law Against Discrimination. The Director adopted the findings and conclusions of the hearing examiner that Sanborn had unlawfully discriminated against Thomson due to her marital status, in violation of N.J.S.A. 10:5-4 and N.J.S.A. 10:5-12(a); that Sanborn's "no relatives" policy placed a limitation on the advantages, privileges or opportunities for employment on the basis of marital status; that Sanborn had failed to justify the policy as a business necessity, and that Sanborn applied the policy more stringently to husbands and wives than to other classes of relatives. The Director ordered Sanborn to cease and desist from unlawfully discriminating against husbands and wives in employment. Thomson was awarded back pay of $5,300 plus compensatory damages of $500 for humiliation, pain and suffering.
Sanborn appeals. It contends essentially that the orders of the Director should be reversed because Thomson's discharge, based on its "no-relative" policy, did not constitute unlawful discrimination due to marital status within the meaning of N.J.S.A. 10:5-4 and N.J.S.A. 10:5-12(a) of the Law Against Discrimination.
The New Jersey Law Against Discrimination was amended in 1970 to include "marital status" as a proscribed basis for employment discrimination. L. 1970, c. 80, § 9 and § 14. *560 See Zahorian v. Russell Fitt Real Estate Agency, 62 N.J. 399, 410 (1973); Peper v. Princeton University Bd. of Trustees, 151 N.J. Super. 15, 23 (App. Div.), certif. granted 75 N.J. 24 (1977). N.J.S.A. 10:5-4 provides:
All persons shall have the opportunity to obtain employment, and to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation, publicly assisted housing accommodation, and other real property without discrimination because of race, creed, color, national origin, ancestry, age, marital status or sex, subject only to conditions and limitations applicable alike to all persons. This opportunity is recognized as and declared to be a civil right.
N.J.S.A. 10:5-12(a), in pertinent part, provides:
It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:
a. For an employer, because of the race, creed, color, national origin, ancestry, age, marital status or sex of any individual, or because of the liability for service in the Armed Forces of the United States, of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment; ....
The primary purpose behind these provisions is to prevent and eliminate discriminatory or disparate employment treatment of members of a protected class. These provisions were designed to afford some degree of assurance that all employment decisions are based on grounds other than those proscribed by discrimination statutes. Under the clear mandate of the law an individual may not be discriminated against in employment because of his or her marital status. Thus, an employer may not base his decision to hire, fire, promote, etc., on the fact that an individual is either married or single.
Here, the proofs establish beyond question that Thomson was discharged by Sanborn solely because of its policy against relatives working in the same department or terminal. *561 Her employment was terminated because of her relationship to another employee, not because of her marital status. Sanborn's "no-relatives" policy was not directed against married people. Had Thomson been married to a person other than one employed in the same terminal she would not have been discharged. The mere fact that in the course of enforcing its "no relatives" policy a particular excluded relative happens to be married does not constitute unlawful discrimination because of marital status within the intendment of N.J.S.A. 10:5-4 and N.J.S.A. 10:5-12 (a). These provisions were not designed to prohibit employment discrimination based upon specific family relationships, albeit the relationship between the individuals exist by reason of their marriage. Cf. Whateley v. Leonia Bd. of Ed., 141 N.J. Super. 476, 479-480 (Ch. Div. 1976). Therefore, we hold that Thomson's discharge pursuant to Sanborn's policy excluding relatives from working in the same department or terminal did not violate the statutory proscription against marital status discrimination.
Moreover, the Director's finding that Sanborn violated the provisions of N.J.S.A. 10:5-4 and N.J.S.A. 10:5-12(a) cannot be grounded upon Sanborn's failure to evenhandedly enforce or apply its "no-relatives" policy. Since we have held that the policy, as applied to spouses, did not violate the proscription against discrimination based on marital status, it is without consequence that Sanborn, at times, may have made exceptions from the policy for particular cases. While we agree with the Director's finding that this constitutes an uneven application of the policy, the foregoing provisions do not give the Division authority to control the irregular application or enforcement of an employment policy unless it involves discrimination on proscribed statutory grounds. The situation might be otherwise if the uneven enforcement of the policy was conspicuously marked by its consistent application solely for married relatives as distinguished from other types of relatives. Cf. Harper v. Trans *562 World Airlines, Inc., 525 F.2d 409 (8 Cir.1975). However, the present record does not support such a state of facts.
Finally, we are satisfied from a consideration of the proofs as a whole that Thomson failed to prove a prima facie case of discrimination requiring Sanborn to go forward with proof justifying the business reasons for its policy. See Dothard v. Rawlinson, ___ U.S. ___, ___ 97 S.Ct. 2720, 2726, 53 L.Ed. 2d 786, 797 (1977); Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); Yuhas v. Libbey-Owens-Ford Co., 562 F.2d 496, 498 (7 Cir.1977); Harper v. Trans World Airlines, Inc., supra at 411. The result we reach here is supported in principle by the Harper case, where the Court of Appeals rejected a similar claim that Trans World Airlines' rule proscribing the employment of spouses in the same department constituted sex discrimination in contravention of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A., § 2000(e) et seq. Plaintiff, who had been employed as a part-time sales agent by Trans World Airlines, married John Harper, a fellow employee in the same department. Plaintiff and Harper later sought permission from the department head to continue working together, but the request was refused. When the couple failed to inform the department head as to which spouse would transfer, terminate or take a leave of absence, plaintiff was released because of her husband's greater seniority. Plaintiff instituted suit. The trial court found that Trans World Airlines' policy did not discriminate against women in purpose or effect, and that there were no sound business reasons for promulgating such a rule. The Court of Appeals affirmed the judgment below, finding that plaintiff failed to prove a prima facie case of discrimination which would have required Trans World Airlines to show that the policy has a demonstrable relationship to the performance of the position. The court, in pertinent part, stated:
*563 In order to successfully maintain a Title VII action, the plaintiff must initially prove that the practices of the employer have a discriminatory effect. While the employer is not necessarily vindicated merely because he lacks the intent to discriminate, Rogers v. International Paper Co., 510 F.2d 1340, 1344 (8th Cir.), vacated and remanded on other grounds, 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975), he will be absolved if the plaintiff fails to prove a discriminatory effect upon a protected class. If discrimination is not shown, the judicial inquiry ends. However, if the plaintiff proffers sufficient evidence to show discrimination, the burden shifts to the defendant to present acceptable and legitimate business reasons for his discriminatory practice. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). * * *
This case does not present the type of overt discrimination found when an employer refuses to hire or discharges an individual merely because of that individual's sex. Cf. Diaz v. Pan American World Airways, Inc., 442 F.2d 385 (5th Cir.), cert. denied, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971). Furthermore, defendant's rule did not expressly operate to adversely affect the employment of married females to the exclusion of married males. Cf. Sprogis v. United Air Lines, Inc., 444 F.2d 1194 (7th Cir.), cert. denied, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971); 29 C.F.R. § 1604.4 (1974). Plaintiff attempts to classify defendant's practice as a form of covert discrimination which arises when a "facially neutral" employment practice is shown, in its application, to have an adverse effect upon a class protected by Title VII. The Supreme Court has recognized that Title VII condemns "not only overt discrimination but also practices that are fair in form, but discriminatory in operation." Griggs v. Duke Power Co., supra 401 U.S. at 431, 91 S.Ct. at 853. * * *
Plaintiff purports to analogize her situation to Griggs by asserting that enforcement of defendant's rule will predictably result in the voluntary discharge of more women than men and, thus, is sexually discriminatory. However, we conclude that plaintiff is not entitled to avail herself of the protective shield of Griggs because she has failed to prove, by statistics or other probative evidence, that defendant's rule adversely affected women. [525 F.2d at 411-412]

* * * * * * * *
In sum, plaintiff has failed to present probative evidence to support her allegation that defendant's rule induces sex discrimination. It is clear that Title VII actions cannot be successfully maintained on the basis of conjectural and speculative evidence. Robinson v. City of Dallas, supra 514 F.2d 1271, at 1273 (5th Cir.). Since plaintiff failed to prove a "disparate effect" upon women due to the implementation of defendant's rule, the requisite threshold issue has not been met and there is no need for defendant to show any business necessity for the rule. Coopersmith v. Roudebush, 170 U.S. App. D.C. 374, 517 F.2d 818, 823 (D.C. Cir.1975). [525 F.2d 414]
*564 Accordingly, the findings, the determination and order and the supplemental order of the Director are reversed, and Thomson's complaint against Sanborn is dismissed with prejudice.
NOTES
[1] Sanborn's policy on the employment of relatives was described in detail in the following letter dated October 31, 1963 sent to employees and posted in the company's terminals:
 October 31, 1963

TO ALL EMPLOYEES
Being aware that confusion exists, our Policy regarding employment of relatives has been reviewed. After careful consideration, a new policy has been formulated. This letter is written to inform each of you exactly what our Policy is regarding the Hiring and Transfer of relatives of employees.
COMPANY POLICY COVERING EMPLOYMENT AND TRANSFER OF RELATIVES
A. Hiring
Applicants who are relatives of individuals currently employed by Sanborn's Motor Express, Inc., will be considered for employment provided:
1. They would be employed at a Terminal or location outside the State in which the related employee is working.
2. They would be employed in a Department other than the Department in which the related employee is working. Consequently if a related employee is working in the Operations, Sales, Accounting Traffic, Claims, Maintenance or Personnel Departments, the applicant may not be employed in the same Department regardless of location.
B. Transfer
An employee who is a relative of another employee, will be considered for transfer provided:
1. He would be transferred to a Terminal or location outside the State in which the other related employee is working.
2. He would be transferred to a Department other than the Department in which the other related employee is working.
C. Definition of Relative
For the purpose of this Policy, a relative is:
Mother, Father, Son, Daughter, Brother, Sister, Mother-in-law, Father-in-law, Son-in-law, Daughter-in-law, Brother-in-law, Sister-in-law, Husband and Wife
It is hoped that this will clarify our Policy and avoid confusion in the future
 H. Blaine Sanborn
The Director of Terminal Operations testified that the same general policy is still followed by the company, although the policy was rewritten sometime after 1972 and incorporated in the company's operations manual in the following form:
SANBORN'S MOTOR EXPRESS, INC. HIRING POLICY
Unless specifically approved by the President, relatives of company employees shall not be hired, excepting for special projects of a temporary, non-recurring nature, and then only with the approval of the appropriate Vice President. December 5, 1975