WHIRLPOOL CORPORATION v CIVIL RIGHTS COMMISSION

Docket No. 74427. Argued March 5, 1986 (Calendar No. 10). Decided
August 5, 1986.

Whirlpool Corporation brought an action in the Berrien Circuit
Court, challenging a decision by the Civil Rights Commission
that Whirlpool's rule prohibiting the hiring of spouses of its
employees violated the marital status provisions of the Civil
Rights Act, and that the rule was not exempt as a bona fide
occupation qualification. The court, Zoe S. Burkholz, J., re-
versed, holding that no violation of the Civil Rights Act had
occurred. The Court of Appeals, BEASLEY, P.J., and ALLEN and
BREIGHNER, JJ., reversed in an unpublished opinion per curiam
(Docket No. 72928). The plaintiff appeals.

In an opinion by Justice BRICKLEY, joined by Chief Justice
WILLIAMS and Justices LEVIN and RILEY, the Supreme Court
*held:*

No-spouse rules which prohibit the hiring of spouses of
employees do not constitute discrimination on the basis of
marital status.

1. Under the Civil Rights Act, an employer may not discrimi-
nate on the basis of marital status. However, the prohibition
was not intended to provide a person a right to be employed by
the same employer as the person's spouse. An employer may
lawfully prohibit any person from working for the employer if
related to another person already employed by it. Such lawful
conduct does not become unlawful merely because certain
related persons are permitted to be employed.

2. In this case, the no-spouse rule at issue is not discrimina-
tion on the basis of marital status. Rather, it results in differ-

REFERENCES

Am Jur 2d, Civil Rights §§ 176 *et seq.*

Distinctions based on marital status as constituting sex discrimina-
tion under § 703(a) of Civil Rights Act of 1964 (42 USCS § 2000e-
2(a)). 34 ALR Fed 648.

What constitutes employment discrimination on basis of "marital
status" for purposes of state civil rights laws. 44 ALR4th 1044.

What constitutes illegal discrimination under state statutory prohi-
bition against discrimination in housing accommodations on ac-
count of marital status. 33 ALR4th 964.

ent treatment of job applicants on the basis of the place of a spouse's employment. Marital status is irrelevant to the employer unless it already employs the applicant's spouse.

Reversed and remanded.

Justice Archer, joined by Justices Cavanagh and Boyle, dissenting, stated that the plaintiff's rule which prohibits the hiring of spouses of current employees violates the Civil Rights Act in that it facially discriminates against persons on the basis of marital status, while not similarly discriminating against persons otherwise related to or living with its employees, and because it necessarily involves inquiry concerning the marital status of prospective employees.

### Opinion of the Court

1. Civil Rights — Employment Discrimination — No-Spouse Rules — Marital Status.

No-spouse rules which prohibit the hiring of spouses of employees are not discrimination on the basis of marital status where the marital status of an applicant for employment is irrelevant to the employer unless the applicant's spouse already is employed by that employer (MCL 37.2101 *et seq.;* MSA 3.548[101] *et seq.*).

### Dissenting Opinion by Archer, J.

2. Civil Rights — Employment Discrimination — Marital Status.

*Prohibition by an employer of the hiring of spouses of its employees violated the Civil Rights Act in that it facially discriminated against persons on the basis of marital status, while not similarly discriminating against persons otherwise related to or living with its employees, and because it required inquiry concerning the marital status of prospective employees (MCL 37.2202[1][a], 37.2206[2][a]; MSA 3.548[202][1][a], 3.548[206][2][a]).*

*Butzbaugh, Page, Butzbaugh & Dewane* (by *John E. Dewane*) and *Matkov, Griffin, Parsons, Salzman & Madoff* (by *David J. Parsons*) for the plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Felix E. League* and *Dianne Rubin,* Assistant Attorneys General, for the defendants.

Brickley, J. The facts of this case are set forth

in the opinion of Justice ARCHER. The issue presented is whether the Legislature intended the Civil Rights Act to prohibit employers from having "no-spouse rules" in their personnel policies. We recently held that antinepotism policies which prohibit "any relatives (natural or through marriage)" of a current employee from being hired do not constitute discrimination on the basis of marital status. *Miller v C A Muer Corp*, 420 Mich 355; 362 NW2d 650 (1984). We believe the reasoning in *Miller* compels a like result in this case.

At issue in *Miller* and *Lowry v Sinai Hospital*, a companion case, were employer's personnel policies which prohibited related employees from working for the same employer at the same restaurant (*C A Muer*) or in the same department (*Sinai Hospital*). The C. A. Muer policy applied to "any relatives (natural or through marriage)" and the Sinai Hospital policy applied to "parents, children, siblings, spouses, grandparents, and legal guardians." 420 Mich 364. In *Miller,* plaintiff worked as a waiter at defendant's restaurant when he became engaged to an employee of the same restaurant. When the employer learned of the engagement, it informed Miller that he would be required to choose between quitting his employment, being discharged, or being transferred to another restaurant operated by Muer. In *Lowry,* plaintiff worked as a security guard at Sinai Hospital. After she married a co-worker who was also a security guard, her employer informed her that policy required one of them to leave the employment or transfer to another department. 420 Mich 358-359.

The question in this Court was whether these policies impermissibly discriminated on the basis of marital status within the meaning of the Civil Rights Act. We began our analysis by noting that

the term "marital status" is not defined in the act. Various definitions of the term were offered:

> It has been said that the term means "whether one is married or not married," . . . or "the social condition enjoyed by an individual by reason of his or her having participated or failed to participate in a marriage." . . . The usual answer to a query about one's marital status is "married," "single," "divorced," "widowed," or "separated." . . . The relevant inquiry is *if* one is married rather than *to whom* one is married. [420 Mich 361-362. Emphasis in original. Citations omitted.]

After observing the split of authority on this issue in other jurisdictions, we went on to discuss the purposes of the act. One of the goals is to "prevent discrimination against a person because of stereotyped impressions about the characteristics of a class to which the person belongs." 420 Mich 362-363. The Michigan act is aimed at the prejudices and biases borne against persons because of their membership in a certain class and seeks to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases. *Id.*

We opted for a narrow definition of the term "marital status":

> By including marital status as a protected class, the Legislature manifested its intent to prohibit discrimination based on *whether* a person is married. To include the identity, occupation, and place of employment of one's spouse within the definition of "marital status" might enlarge the protected class to include all married persons who desire to work with their spouse.[10] Such a construction would invalidate most antinepotism policies.

___

[10] Such an expansive construction of "marital status" would also include in the protected class an employee whose wife is the chief executive officer of his employer's major competitor. We do not wish to be understood as saying that an employer should

*not* hire a close relative of one of its competitors' employees; we conclude only that the Legislature did not *require* an employer to make all personnel decisions without regard to the identity of an employee's spouse. [Citations omitted. Emphasis in original.]

We declined to speculate whether such personnel policies are sound, but instead found that they did not reflect offensive or demeaning stereotypes, prejudices, or biases. We concluded:

> Absent a more specific manifestation of legislative intent, we conclude that the prohibition of employment discrimination on the basis of "marital status" was not meant to protect a right to be employed in the same department as one's spouse. [420 Mich 364.]

We believe the result and reasoning of *Miller* compels the conclusion that Whirlpool's policy does not violate the Civil Rights Act. The most obvious reason for this conclusion is that the employer, under *Miller,* can lawfully prohibit any relative from working in the plant if related to another already there. The lawful conduct of not allowing relatives to work together should not become unlawful merely because certain relatives are so allowed.

Also, this is not discrimination on the basis of marital status. It is different treatment based on the fact that one's spouse works in the same place as the applicant. Marital status is irrelevant to the employer unless there is a spouse already working for the employer. This is not discrimination based on a stereotypical view of the characteristics of married or single persons.

The question here is one of legislative intent, and we do not believe the Legislature intended to so severely regulate employers' personnel policies so as to prohibit no-spouse rules. If the lawmakers did intend such a change, then their intent must be manifested more clearly.

The dissent partially bases its conclusion on the assumption that the "determination of whether an applicant's spouse works [at the same place] necessarily involves an inquiry into the marital status of the prospective employee." *Post,* p 541. As noted by the dissenters, § 206(2)(a) forbids an employer from making an inquiry as to the marital status of an applicant. They conclude from these two premises that the no-spouse *rule* violates the statute.

We do not believe this reasoning is sound. Under this rationale an employer could arguably retain a no-spouse rule, if it chose to enforce the rule by means other than inquiring into the applicant's marital status.[1]

We believe *Miller* mandates the conclusion that the Legislature did not intend to include no-spouse rules among the conduct constituting discrimination on the basis of marital status.

The Court of Appeals here followed pre-*Miller* authority in concluding that the no-spouse rule is facially discriminatory on the basis of marital status and thus did not address appellee's claim that the rule discriminates on the basis of sex. We noted in *Miller* that "[a] facially neutral employment practice can operate as a mask or pretext for impermissible discrimination." 420 Mich 365.

We believe that many of the factual arguments asserted by appellees in attempting to distinguish the policies in *Miller* from the employment policy

---

[1] Moreover, we believe that in the great majority of cases it will be possible for an employer to determine whether an applicant's spouse is already employed at the same place without inquiring about marital status. The employer could simply ask: "Do you have a spouse that currently works for this company?" A "no" answer to this question does not reveal the marital status of the prospective employee to the employer. While a "yes" answer does reveal the applicant's marital status, it is the only instance in which the marital status of the applicant will be revealed, and the information clearly sought is not marital status, but whether the spouse, if there is one, works for the same employer.

in the present case, with regard to the marital status discrimination issue, actually are more related to the underlying sex discrimination claim. The arguments challenging the soundness and necessity of Whirlpool's policy, for example, would not seem relevant to the primary statutory issue presented. Likewise, the fact that Whirlpool does not also base employment decisions on other familial relationships, or that it does not prohibit the employment of applicants "living with" current employees, would also seem irrelevant. Yet, these arguments could raise the inference that the "no-spouse" rule involved in this case may be intended to discriminate against women.

Reversed and remanded to the Court of Appeals for consideration of the sex discrimination claim.

WILLIAMS, C.J., and LEVIN and RILEY, JJ., concurred with BRICKLEY, J.

ARCHER, J. (*dissenting*). The question we address in this case is whether Whirlpool's "no-spouse" rule violates the Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.,* which prohibits discrimination on the basis of "marital status" as well as inquiries concerning the marital status of prospective employees.

Whirlpool's no-spouse rule singles out the marital relationship and prohibits the hiring of applicants who have spouses currently employed at the St. Joseph plant. Applicants who are related to or who live with employees working at the St. Joseph plant are not similarly discriminated against. Because Whirlpool's no-spouse rule singles out the marital relationship and does not apply to other familial relationships, it discriminates against applicants on the basis of marital status which is prohibited under § 202 of the Civil Rights Act. The

no-spouse rule also necessarily involves an inquiry concerning whether a person is married. Such inquiries are prohibited under § 206 of the act.

We would hold that Whirlpool's no-spouse rule violates the Civil Rights Act.

## I

### FACTS

The basic facts of this case are not in dispute. Margaret Frazier applied for a job with Whirlpool and was interviewed on February 12, 1977. On March 28, 1977, Whirlpool sent Mrs. Frazier a letter stating that she had passed the "preliminaries up to the interview" but that there were no jobs available. The letter further informed Mrs. Frazier that her application would remain active for ninety days from February 12, 1977.[1] At some point during the month of March, Whirlpool discovered that Mrs. Frazier had a spouse working at its St. Joseph plant and, pursuant to its rule against hiring spouses of current employees, decided not to hire her. Mrs. Frazier was informed of Whirlpool's no-spouse rule[2] and its decision not to hire her some time during the month of March.

On March 31, 1977, the Civil Rights Act,[3] which repealed the Fair Employment Practices Act,[4] became effective and prohibited discrimination on the basis of marital status.[5] The act also prohibits an employer from making inquiries into the mari-

---

[1] Whirlpool asserts that this letter was sent by mistake. However, Whirlpool apparently did not forward a follow-up letter to inform Mrs. Frazier of the mistake.

[2] We note that Whirlpool's no-spouse rule dates back to World War II.

[3] MCL 37.2101 et seq.; MSA 3.548(101) et seq.

[4] MCL 423.301 et seq.; MSA 17.458(1) et seq., repealed by 1976 PA 453, § 804, effective March 31, 1977.

[5] MCL 37.2202(1)(a); MSA 3.548(202)(1)(a).

tal status of prospective employees.[6] Mrs. Frazier's employment application with Whirlpool predates the enactment of this act. At the time of her application, the FEPA did not contain a prohibition against discrimination on the basis of marital status.

Mrs. Frazier's original complaint which alleged age discrimination was filed with the Department of Civil Rights on April 27, 1977. She filed an amended complaint on October 6, 1978, alleging discrimination on the basis of marital status. The Department of Civil Rights then issued a charge alleging that Whirlpool's no-spouse rule constitutes unlawful discrimination on the basis of both marital status and sex. The charge further alleged that Mrs. Frazier's individual rights had been violated and that Whirlpool was engaged in a continuing practice of discrimination.[7]

There is no conclusive evidence that the parties had any further contact between the effective date of the act and the filing of the complaint in this case. Mrs. Frazier did not resubmit a job application to Whirlpool after the Civil Rights Act became effective. The record indicates that Whirlpool's no-spouse rule continues to be applied to new applicants.

By order dated April 28, 1981, the Civil Rights Commission concluded that Whirlpool's no-spouse rule violated the marital status provisions of the Civil Rights Act. The commission further concluded that the challenged rule did not qualify for a bona fide occupation qualification exemption.[8] The commission rejected the sex discrimination

---

[6] MCL 37.2206(2)(a); MSA 3.548(206)(2)(a).

[7] At the time of the initial hearing in this matter, 1,666 men and 242 women were employed at Whirlpool's St. Joseph plant. Of these 1,908 employees, two-thirds were married.

[8] MCL 37.2208; MSA 3.548(208).

charge. The commission also found that because Mrs. Frazier was denied employment before the effective date of the Civil Rights Act she lacked standing to pursue a claim of marital status discrimination, and her individual case was dismissed.[9] The commission, however, did retain jurisdiction over the "pattern or practice" charge.[10]

On appeal, the Berrien Circuit Court reversed the commission's order, holding that no violation of the Civil Rights Act had occurred. The defendants appealed, and, in an unpublished opinion dated May 23, 1984, the Court of Appeals reversed the circuit court order and reinstated the commission's order that Whirlpool cease and desist from applying its no-spouse rule.

## II

In the instant case, we are asked to determine the validity of Whirlpool's no-spouse rule which applies to married couples only. Initially, we note that Whirlpool's no-spouse rule[11] is a plant-wide policy[12] which applies to married applicants whose spouses are currently employed at the St. Joseph plant. The rule does not apply to applicants who are blood relatives of or who live with current plant employees. The rule also does not apply to

[9] See Civil Rights Commission Order No. 34472-E1.

[10] MCL 37.2605(1); MSA 3.548(605)(1) provides in pertinent part:

> If at a hearing on a charge, a pattern or practice of discrimination prohibited by this act appears in the evidence, the commission may, upon its own motion or on motion of the claimant, amend the pleadings to conform to the proofs, make findings, and issue an order based on those findings.

[11] We note that Whirlpool's no-spouse rule has never been reduced to a writing. Consequently, a written version of the rule was not offered into evidence as an exhibit.

[12] The rule does not merely apply to persons who are applying to work in the same unit/department as their spouses.

married couples already employed at the plant or to a single employee who marries another employee who works at the plant. Further, the rule does not prohibit spouses from working in the same department. Thus, the Whirlpool no-spouse rule is distinguishable from the antinepotism policies presented in *Miller v C A Muer*, 420 Mich 355; 362 NW2d 650 (1984).[13]

The validity of no-spouse rules similar to the one presented in this case has been sustained when challenged under Title VII of the Civil Rights Act of 1964, as amended, 42 USC 2000e *et seq.*[14] The Civil Rights Act, unlike the federal act, prohibits employment discrimination on the basis of a person's marital status. The Michigan act also prohibits an employer from making or using oral or written inquiries concerning the marital status of a prospective employee.

The Civil Rights Act provides in pertinent part:

[13] In *Miller,* two cases were consolidated. We were confronted with two different antinepotism policies. Both of the policies were promulgated by the defendant employers. The C. A. Muer policy prohibited a husband and wife or any relative (natural or through marriage) from working in the same restaurant. The Sinai Hospital policy prohibited relatives, including spouses, from working in the same department. Plaintiff Miller was employed at a C. A. Muer restaurant. He was informed that after he married another employee who worked at the restaurant, he would have to choose between leaving the employment or being transferred to another restaurant operated by C. A. Muer. Plaintiff Lowry and her husband were employed as security guards at Sinai Hospital. Shortly after they got married, the Lowrys were informed by the hospital that one of them would have to leave the employment or transfer to another department.

[14] See, e.g., *Yuhas v Libbey-Owens-Ford Co,* 562 F2d 496 (CA 7, 1977), cert den 435 US 934 (1978). The rule presented in this case prohibited the hiring of hourly employees at plants operated by the defendant employer when the applicant's spouse was already employed at the plant in the same capacity. The rule was directed only to the hiring of new employees. The rule did not require the discharge of either spouse with regard to couples married on or before the effective date of the rule. The rule also did not require termination of an employee who married a fellow employee.

An employer shall not:

*Fail or refuse to hire,* or recruit, or discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or *marital status.* [MCL 37.2202(1)(a); MSA 3.548(202)(1)(a).]

* * *

Except as permitted by rules promulgated by the commission or by applicable federal law, an *employer* or employment agency *shall not:*

*Make or use a written or oral inquiry or form of application that elicits or attempts to elicit information concerning* the religion, race, color, national origin, age, sex, height, weight, or *marital status* of a prospective employee. [MCL 37.2206(2)(a); MSA 3.548(206)(2)(a). Emphasis supplied.]

In *Miller, supra,* we were asked to determine the validity of two antinepotism policies under the above-cited provision of the Civil Rights Act. Justice LEVIN wrote the following concerning the definition of marital status:

By including marital status as a protected class, the Legislature manifested its intent to prohibit discrimination based on whether a person is married. To include the identity, occupation, and place of employment of one's spouse within the definition of "marital status" might enlarge the protected class to include all married persons who desire to work with their spouse. Such a construction would invalidate most antinepotism policies. [420 Mich 363.]

After defining the term marital status, we concluded that the challenged antinepotism policies focused on a person's familial relationship to other employees within the same department or unit. Neither policy specifically singled out the marital

relationship. The antinepotism policies were found to be nonviolative of the Civil Rights Act because they applied to several familial relationships. The fact that the policies did not focus on the marital relationship or apply to married couples only convinces us that the definition of the term marital status was not essential to the result reached in *Miller.* Hence, the language used in that case to define marital status was merely obiter dicta.

As we stated in *Hett v Duffy,* 346 Mich 456, 461; 78 NW2d 284 (1956):

> Statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand, are, however illuminating, but obiter dicta and lack the force of adjudication.

Because we conclude that the language in *Miller* concerning the definition of marital status was merely obiter dicta, we are not bound to apply that definition to our review of the no-spouse rule presented in the instant case. This fact is further evidenced by the statement we made in footnote 1 of our holding in *Miller.*

> The antinepotism policies at issue in the instant cases, which facially are applicable to several familial relationships, must be distinguished from "no-spouse rules" which apply to married couples only. We express no opinion on the validity of no-spouse rules. [420 Mich 358, n 1.]

We will now define what constitutes marital status discrimination for purposes of evaluating the challenged no-spouse rule. When the Legislature amended the Civil Rights Act to prohibit marital status discrimination, we believe that they intended to include employment policies which

focus on the marital relationship only. When no-spouse rules are made a part of the employment hiring, firing, and recruitment process, a prospective employee or employee who is the spouse of a current employee is denied employment or fired on the basis of marital status as prohibited under the act. Policies, such as the antinepotism policies presented in *Miller,* which focus on several familial relationships, rather than singling out the marital relationship, do not constitute marital status discrimination. It is the fact that a prospective employee or current employee is related to another current employee, and not the marital relationship as such, which is the basis of a decision not to hire under *Miller*-type antinepotism policies.

Whirlpool's no-spouse rule singles out the marital relationship. It applies to married couples only and prohibits the hiring of prospective employees at the St. Joseph plant if their spouses are currently employees at the plant. Prospective employees who are related by blood to, or who live with, current employees are not prohibited from working at the St. Joseph plant. Hence, the challenged no-spouse rule facially treats married applicants differently on the sole basis that their spouses are current employees. We would hold that Whirlpool's no-spouse rule facially discriminates against prospective employees on the basis of marital status in violation of § 202.

Such a holding would not be precluded by the fact that the no-spouse rule does not apply to all married couples. See *Phillips v Martin Marietta Corp,* 400 US 542; 91 S Ct 496; 27 L Ed 2d 613 (1971).

Whirlpool's no-spouse rule also violates § 206 of the act because a determination of whether an applicant's spouse works at Whirlpool's St. Joseph

plant necessarily involves an inquiry into the marital status of the prospective employee.[15] This fact is uncontroverted by the record. Such inquiries are explicitly prohibited by the statute. MCL 37.2206(2)(a); MSA 3.548(206)(2)(a).[16]

Discrimination based on marital status may be justified in certain situations. For example, as noted in *Washington Water Power Co v Washington State Human Rights Comm,* 91 Wash 2d 62, 68; 586 P2d 1149 (1978):

> [T]here may be situations in which this type of discrimination is justified for legitimate business reasons, as where one spouse supervises the other, or audits his or her work, or where the spouses are in direct or potential competition with each other.

The Legislature recognized this fact when it added marital status to the bona fide occupation qualification (BFOQ) provision which states:

> A person subject to this article may apply to the commission for an exemption on the basis that religion, national origin, age, height, weight, or sex is a bona fide occupational qualification reasonably necessary to the normal operation of the business or enterprise. Upon sufficient showing, the commission may grant an exemption to the appropriate section of this article. *An employer may have a bona fide occupational qualification on the basis of religion, national origin, sex, age, or marital status, height and weight without obtaining prior exemption from the commission, provided that an employer who does not obtain an exemption shall*

[15] We note that the employment application used by Whirlpool at the time Mrs. Frazier applied for a job asked the marital status of the applicant. The record does not indicate whether this employment application form is currently being used by Whirlpool. However, the record does indicate that Whirlpool currently makes inquiries concerning the marital status of prospective employees.

[16] We note that this section which prohibits inquiries concerning the marital status of a prospective employee was not presented for our consideration in *Miller, supra.*

*have the burden of establishing that the qualifica-
tion is reasonably necessary to the normal opera-
tion of the business.* [MCL 37.2208; MSA
3.548(208). Emphasis supplied.]

During proceedings before the commission,
Whirlpool contended that under the above statu-
tory provision, its no-spouse rule qualified for a
BFOQ exemption. The commission, however, con-
cluded that the challenged no-spouse rule does not
qualify for a BFOQ exemption. Because the circuit
court concluded that the no-spouse rule did not
violate the Civil Rights Act, the court found it
unnecessary to reach this question. The Court of
Appeals found that there was evidence supporting
the commission's finding concerning the BFOQ ex-
emption and declined to interfere with the com-
mission's decision on this point.

Appeals from final orders of the Civil Rights
Commission are to be tried de novo. Const 1963,
art 5, § 29. The question whether Whirlpool's no-
spouse rule qualifies for a BFOQ exemption was
never decided in the circuit court. Our review on
appeal is of the circuit court decision, not that of
the commission under the "clearly erroneous"
standard of MCR 2.613(C). See *Dep't of Civil
Rights v Beznos Corp,* 421 Mich 110, 117; 365
NW2d 82 (1984), citing *Civil Rights Comm v
Chrysler Corp,* 80 Mich App 368, 372-373; 263
NW2d 376 (1977). The Court of Appeals therefore
erred by reviewing the commission's decision on
the BFOQ question. Thus, we would remand this
case to the circuit court for further findings.

CAVANAGH and BOYLE, JJ., concurred with
ARCHER, J.