JESSE VILLAGONZA and CYNTHIA VILLAGONZA, Plaintiffs–Appellants, v. HAWAII INSURANCE GUARANTY ASSOCIATION, Defendant–Appellee

NO. 13037

(CIV. NO. 87–2342)

MAY 1, 1989

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

The Hawaii Insurance Guaranty Association (HIGA) is a nonprofit unincorporated legal entity established by the legislature "to provide a

mechanism for the payment of covered claims under certain insurance policies [in order] to avoid financial loss to claimants or policyholders because of the insolvency of an insurer [and a means] to assess the cost of such protection among insurers." HRS § 431D–2 (1985).[1] The question in this appeal from a summary judgment entered by the Circuit Court of the First Circuit is whether HIGA was obligated to honor a claim against a surplus line insurer[2] who became insolvent and could not pay its share of the agreed settlement of a tort claim. Reviewing the record and the relevant statutory provisions, we conclude the circuit court was correct in ruling HIGA had no obligation to do so.

I.

The claim in question was submitted by Jesse and Cynthia Villagonza to HIGA for payment; it arose out of a construction accident that occurred on February 24, 1985, in which Jesse Villagonza was injured.

---

[1] The reference here is to an insurance statute that has been repealed and reenacted as part of the Hawaii Insurance Code. Session Laws of Hawaii (Haw. Sess. Laws) 1987, chapter 347 repealed chapters 294, 431, 431A, 431D, 431F, 431H, 431J, 432, 433, 434, and 435 of the Hawaii Revised Statutes and recodified their provisions, without substantive change, in the new chapter 431. The provisions of HRS chapter 431D, Insurance Company Insolvency, are now found in HRS chapter 431, article 16, Guaranty Associations; and HRS § 431D–2 (1985) is now designated as HRS § 431:16–102. Since the events under review occurred prior to the effective date of the recodification, July 1, 1988, all statutory section designations in this opinion are the old designations.

[2] "Surplus line insurance" is by statutory definition "insurance procured from an unauthorized insurer." HRS § 431–329 (1985). As the term implies, it is insurance procured "in addition to or in excess of the amount and coverage which can be procured from [a] substantial number of . . . insurers [authorized to transact insurance in Hawaii]." HRS § 431–330(2) (1985). And such insurance can only be procured if "[a]fter diligent search the general agent determines in good faith that any portion or the full amount of insurance required to protect the interest of the insured, or insurance affording substantially the same protection, cannot be procured from a substantial number of the insurers authorized to transact that kind of insurance in [Hawaii]." HRS § 431–330(1) (1985). Surplus line insurers, therefore, insure risks that insurers authorized to transact insurance in Hawaii are unwilling to insure.

The Villagonzas sued Brundage Concrete Pumping, Inc. for damages thereafter, and agreed to settle their claim in October of 1986. The settlement called for the payment to them of $625,000, $300,000 by the defendant's primary insurer, Argonaut Insurance Company, and $325,000 by the defendant's surplus line insurer, Holland–America Insurance Company. But by November of 1986 Holland–America, a California insurer, was insolvent, had been placed in conservatorship, and could not pay its share of the agreed sum.

The plaintiffs thus looked to HIGA for the payment of $300,000, the monetary limit on claims the association is allowed to pay. HIGA, however, refused to honor the Villagonzas' claim; in its opinion, the relevant provisions of HRS chapter 431D (1985) only provided for the payment of a claim against an "authorized insurer" and Holland–America was not one. The plaintiffs then sued HIGA, asserting Holland–America was an "authorized insurer" in this instance because the policy insuring Brundage Concrete Pumping, Inc. had been procured through a licensed surplus line broker in accord with the provisions of HRS § 431–330 (1985). Summary judgment was sought by the defendant as well as the plaintiffs, and the circuit court granted the defendant's motion. The plaintiffs perfected a timely appeal to this court.

## II.

The issue on appeal being one of statutory interpretation, we begin the task of ascertaining and giving effect to the intention of the legislature by examining the Hawaii Insurance Guaranty Association Act, HRS chapter 431D (1985).

## A.

The legislature created the Hawaii Insurance Guaranty Association "to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer ... and to provide an association to assess the cost of such protection among insurers." HRS § 431D–2 (1985). All insurers licensed to transact insurance in Hawaii and writing all kinds of direct insurance, other than life, title, surety, disability, credit, mortgage guaranty, and ocean

marine insurance,[3] are compelled to "be and remain members of the association as a condition of their authority to transact insurance . . . ." HRS § 431D–6 (1985).

The association is obligated to cover unpaid claims[4] in excess of $100 but less than $300,000 which arise out of and are within the coverage of an insurance policy issued by an insurer who was authorized to transact insurance in Hawaii when the policy was issued or when the insured event occurred and is later declared insolvent by a court of competent jurisdiction.[5] It defrays these obligations through assessments levied on its

---

[3] HRS § 431D–3 (1985) makes the provisions of the Act applicable "to all kinds of direct insurance, except life, title, surety, disability, credit, mortgage guaranty, and ocean marine insurance." And HRS § 431D–5(5) (1985) defines "member insurer" as "any person who (A) writes any kind of insurance to which [the Act] applies under section 431D–3, including the exchange of reciprocal or inter–insurance contracts, and (B) is licensed to transact insurance in this State."

[4] HRS § 431D–5(3) (1985) defined a "covered claim" as

an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer after May 25, 1971, and (A) the claimant or insured is a resident of this State at the time of the insured event or (B) the property from which the claim arises is permanently located in this State. "Covered claim" does not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise.

[5] HRS § 431D–5(4) (1985) defined an "insolvent insurer" as

(A) an insurer authorized to transact insurance in this State either at the time the policy was issued or when the insured event occurred and (B) determined to be insolvent by a court of competent jurisdiction[;]

and HRS § 431D–8(a) (1985) provided in part that the association shall

(1)     Be obligated to the extent of the covered claims existing prior to the determination of insolvency and arising within thirty days after the determination of insolvency, or before the policy expiration date if less than thirty days after the determination, or before the insured replaces the policy or causes its cancellation, if the insured does so within thirty days of the determination, but such obligation shall include only that amount of each covered claim which is in excess of

members. HRS § 431D–8(a)(3) (1985). Each "member insurer"[6] is assessed "in the proportion that the net direct written premiums of the member insurer for the preceding calendar year bears to the net direct written premiums of all member insurers for the preceding calendar year." *Id.* And the rates and premiums paid by their insured perforce reflect the assessments.[7]

## B.

The Hawaii Insurance Guaranty Association Act, however, does not speak of "surplus line insurance." The term, as we noted at the outset, is defined in HRS § 431–329 (1985), which was part of the repealed Hawaii Insurance Law, as "insurance procured from an unauthorized insurer in accordance with the provisions of [HRS § 431–330 (1985)]." Thereunder, "[a] general agent is permitted to procure [such] insurance only if:

    (1)    After diligent search the general agent determines in good faith that any portion or the full amount of insurance required to protect the interest of the insured, or insurance affording substantially the same protection, cannot be procured from a substantial number of

---

    $100 and is less than $300,000, except that the association shall pay the full amount of any covered claim arising out of a workers' compensation policy. In no event shall the association be obligated to a policyholder or claimant in an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises.

    (2)    Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent.

[6] *See supra* note 3.

[7] HRS § 431D–16 (1985) read as follows:

    **Recognition of assessment in rates.** The rates and premiums charged for insurance policies to which this chapter applies shall include amounts sufficient to recoup a sum equal to the amounts paid to the association by the member insurer less any amounts returned to the member insurer by the association and rates shall not be deemed excessive because they contain an amount reasonably calculated to recoup assessments paid by the member insurer.

the insurers authorized to transact that kind of insurance in this State; and

(2) The surplus line insurance procured is in addition to or in excess of the amount and coverage which can be procured from such substantial number of authorized insurers; and

(3) The insurance is procured through a licensed surplus line broker; and

(4) The insurance is not procured at a rate lower than the lowest rate at which a substantial number of the insurers authorized to transact that kind of insurance in this State will provide insurance affording substantially the same protection."

In short, surplus line insurance is meant to cover risks that authorized insurers have refused to cover; it is insurance that is "exported" and placed with unauthorized insurers by a licensed surplus line broker. *See Railroad Roofing & Bldg. Supply Co. v. Financial Fire & Casualty Co.*, 85 N.J. 384, 389, 427 A.2d 66, 68 (1981). By virtue of HRS § 431–332 (1985), "[i]nsurance contracts procured as surplus line coverage from unauthorized insurers in accordance with [applicable provisions of the Hawaii Insurance Law are] fully valid and enforceable as to all parties, and [are] given recognition in all matters and respects to the same effect as like contracts issued by authorized insurers."

### III.

The Villagonzas concede Holland–America has never been licensed to transact insurance in Hawaii. But they maintain the transaction that provided Brundage Concrete Pumping, Inc. with insurance coverage in excess of the amount provided by Argonaut Insurance Company was authorized.[8] Thus in their view Holland–America was an authorized in-

---

[8] They rely here on HRS § 431–82(a) (1985), which reads:

(a) No person shall act as an insurer and no insurer shall transact insurance in this State other than as authorized by a certificate of authority granted to it by the insurance commissioner; except, as to such transactions as are expressly otherwise provided for in this chapter.

surer for purposes related to the Hawaii Insurance Guaranty Association Act.

True, transactions whereby licensed surplus line brokers procure insurance from unlicensed insurers to cover risks authorized insurers are unwilling to insure are expressly provided for in HRS chapter 431 (1985). And a policy procured in accord with HRS § 431–330 (1985) is "fully valid" and recognized "to the same effect as like contracts issued by authorized insurers." HRS § 431–332 (1985). Still, it does not necessarily follow that HIGA is obliged to honor claims against an insolvent surplus line insurer. For when we read HRS chapter 431D throughout, we discern no legislative intention to have HIGA do so.

The legislative scheme, as we said earlier, "provide[s] a mechanism for the payment of covered claims under certain insurance policies to · avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer[.]" HRS § 431D–2 (1985). HIGA is the cogwheel of this mechanism; and pursuant to HRS § 431D–8(a)(1) (1985), it is obliged to pay certain claims against insurers who become insolvent.[9] It is "deemed the insurer to the extent of its obligation[10] on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent." HRS § 431D–8(a)(2) (1985). What HIGA is duty bound to assume, therefore, are the obligations of an "insolvent insurer," which for purposes of the Hawaii Insurance Guaranty Association Act "means (A) an insurer authorized to transact insurance in this State either at the time the policy was issued or when the insured event occurred and (B) determined to be insolvent by a court of competent jurisdiction." HRS § 431D–5(4) (1985). Holland–America, though insolvent, was never authorized to transact insurance in Hawaii; it was at all relevant times an unauthorized insurer.

The statutory scheme is designed also "to assist in the detection and prevention of insurer insolvencies,[11] and to provide a [means] to assess the

---

[9] *See supra* note 5.

[10] The "extent of its obligation" is $300,000; *see supra* note 5.

[11] A duty imposed on the Board of Directors of the association is "to notify the [insurance] commissioner of any information indicating any member insurer may be insolvent or in a financial condition hazardous to the policyholders or the pub-

cost of [the] protection [afforded under the scheme] among insurers." HRS § 431D–2 (1985). The measures contemplated to accomplish these purposes, of course, can only be effective among insurers who must "be and remain members of the [Hawaii Insurance Guaranty Association] as a condition of their authority to transact insurance in this State." HRS § 431D–6 (1985).

In order to fulfill its duties, the association is empowered to "[a]ssess insurers amounts necessary to pay [the covered claims against insolvent insurers], the expenses of handling covered claims subsequent to an insolvency, . . . the cost of examinations under section 431D–13 [(1985)],[12] and other expenses authorized by [chapter 431D (1985)]." HRS § 431D–8(a)(3) (1985). The assessments are levied against each member insurer "in the proportion that [his] net direct written premiums . . . for the preceding calendar year bears to the net direct written premiums of all member insurers for the preceding calendar year." *Id.*

Holland–America, of course, has never been a member of the association; it has never been assessed its share of the cost of the protection afforded claimants and policyholders under HRS chapter 431D (1985). As an unauthorized insurer, Holland–America has not been subjected to regulation by the insurance commissioner; nor has it been subjected to an examination of its financial condition. *See supra* note 11. Under the circumstances, we cannot believe the legislature intended that the association would assume the liability occasioned by Holland–America's insolvency, particularly when the cost must ultimately be borne by the policyholders of authorized insurers. *See supra* note 7.

The summary judgment is affirmed.

*Paul E. DiBianco (Adelina A. Simpliciano* with him on the briefs; Wagner, Watson & DiBianco, of counsel) for appellants.

---

lic." HRS § 431D–13(1) (1985). The Board may "request that the commissioner order an examination of any member insurer which the board in good faith believes may be in [such] condition[.]" HRS § 431D–13(2) (1985). And it may "make reports and recommendations to the commissioner upon any matter germane to the solvency, liquidation, rehabilitation, or conservation of any member insurer." HRS § 431D–13(4) (1985).

[12] *See supra* note 11.

*Kevin P.H. Sumida (Clyde Wm. Matsui, Randall Y.S. Chung, Gary W.B. Chang, Thomas Tsuchiyama* and *Michael N. Tanoue* with him on the brief) for appellee.