**John BARNS, Plaintiff,**

v.

**UNDERWRITING MEMBERS OF LLOYDS, LONDON, Subscribing to Policy No. 832–N–0211347.**

**Civ. A. No. 3–86–3065–H.**

United States District Court, N.D. Texas, Dallas Division.

Dec. 24, 1987.

Richard Jackson, Dallas, Tex., for plaintiff.

John H. Marks, Jr., Strasburger & Price, Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

SANDERS, Acting Chief Judge.

Before the Court is a dispute between the insured and the insurer about an insurance contract. One of the disputed issues of law concerns a particular subparagraph of the policy, which states:

> Notwithstanding anything stated to the contrary in this Condition, in the event that the Insured Person signs a contract for Professional Football before the termination date of this Policy, this Policy shall be deemed cancelled from said date of the signing and the Premium charged for this Policy shall be deemed Fully Earned and no return of premium will be allowed the Holder.

For the reasons stated below, the Court is of the opinion that the subparagraph is invalid as a matter of law.

The parties to this case do not dispute that the insurer defendants, the Underwriting Members of Lloyds, London ("Lloyds"), accepted the entire amount of the premium from the plaintiff insured, John Barns. As stated on the schedule page of the policy, "[t]he period of Insurance [was] from 9th August, 1985 to 30th August, 1986 both days at Noon Standard Time at the Residence of the Holder, and for such further periods as may be mutually agreed upon." The disputed subparagraph, which purports to limit the period of coverage, appears on page four of the policy as the last part of paragraph nine in "Part V–Conditions."

The defendants claim that the subparagraph terminated Barns' coverage on April 30, 1986, when Barns signed an NFL contract with the Seattle Seahawks. The plaintiff claims that under Art. 3.70–7 of the Texas Insurance Code the subparagraph is a nullity. Article 3.70–7 states in pertinent part:

> "If any ... policy contains a provision establishing, as an age limit or otherwise, a date after which the coverage provided by the policy will not be effective, and if such date falls within a period for which premium is accepted by the insurer ... the coverage provided by the policy will continue in force subject to any right of cancellation until the end of the period for which the premium has been accepted."

Tex.Ins.Code Ann. art. 3.70–7 (Vernon 1981).

Defendants argue that Art. 3.70–7 does not apply to this case as a matter of law. First, defendants argue that they are not subject to regulation by the state of Texas because they do not do business in Texas. Second, defendants argue that as a surplus lines insurer they are outside the scope of Art. 3.70–7. Finally, defendants argue that even if Art. 3.70–7 applies to them, it does not apply to language such as that contained in the disputed subparagraph of Barns' insurance policy. This opinion addresses each of defendants' arguments in turn.

### Defendants Subject to Regulation

■ The Court holds that defendants do transact business in Texas and, therefore, are subject to regulation by the state. Milton O. Johnston of Houston, Texas is listed on page five of the insurance contract as "Insurer's Representative." He is also named on the insurance application form as Lloyds' agent. That Johnston was authorized to represent defendants and perform business on their behalf is further evidenced by the fact that he was plaintiff's sole contact with Lloyds during the negotiations regarding the policy.

Johnston held himself out as Lloyds' authorized representative, and there is no reason to believe that he was not. Furthermore, the policy was delivered and the premium was paid in Texas. The business of purchasing the insurance policy clearly was transacted in Texas.

### Defendants Within Scope of Article 3.70–7

■ The Court also rejects defendants' second argument, that as a surplus lines insurer Lloyds is outside the scope of Art. 3.70–7. Article 3.70–7 is part of subchapter G of the Insurance Code. Subchapter G was originally enacted separately from the Insurance Code, and its scope is stated in Art. 3.70–1(C) as follows:

> This Act shall apply to and govern individual accident and sickness insurance policies delivered, or issued for delivery, in the State of Texas by life, health and accident companies, mutual life insurance companies, mutual assessment life insurance companies, mutual insurance companies, local mutual aid associations, mutual or natural premium life or casualty insurance companies, general casualty companies, *Lloyds*, reciprocal or inter-insurance exchanges ... or any other insurer which by law is required to be licensed by the Board; provided, however, this Act shall not apply to any ... insurer whose activities are by statute exempt from the control of the Board and which are entitled by statute to an exemption certificate from the Board in evidence of their exempt status....

Tex.Ins.Code Ann. art. 3.70–1(C) (Vernon 1981) (emphasis added).

Defendants argue that the language "or any other insurer which by law is required to be licensed by the Board" modifies the long list of organizations that precedes it thereby exempting any listed insurer that is not required to be licensed by the Board. Defendants maintain that they are surplus lines insurers, and, by the terms of Art. 21.43 of the Insurance Code, are not required to be licensed by the Board. Thus defendants contend they are outside the scope of Art. 3.70–7.

The Court disagrees with defendants' position for a number of reasons. First, Lloyds is an insurer specifically listed in Art. 3.70–1. The Court holds that the insurers specifically listed in Art. 3.70–1 are governed by subchapter G unless, as is provided by the statute, the activities of that insurer "are by statute exempt from the control of the Board." If Art. 3.70–1 were to be interpreted as defendants urge, then the legislature's specific listing of companies therein would be meaningless. The legislature might as well have said: "This Act shall apply to any insurer which by law is required to be licensed by the Board." The legislature did not so state and this Court refuses to do so judicially.

The legislature did, however, provide to specifically listed insurers a statutory exemption from the scope of subchapter G's coverage. Article 3.70–1 provides that subchapter G will not apply to an "insurer whose activities are by statute exempt from the control of the Board." For the

reasons stated below the Court finds that defendants are not such an insurer.

Defendants rely on Art. 21.43 of the Texas Insurance Code to show that they are not required to be licensed by the Board. Article 21.43 governs foreign insurance corporations; it states:

> It shall be unlawful, except as is provided for surplus lines in Articles 1.14–1 and 1.14–2 of this code, for any foreign insurance corporation ... to engage in the business of insuring others against losses ... without initially procuring a certificate of authority from the commissioner of insurance permitting it to engage in those business activities.

Tex.Ins.Code.Ann. art. 21.43(a) (Vernon Supp.1987). Defendants are correct that Art. 21.43(a) exempts them as surplus lines insurers from procuring a certificate of authority. However, Art. 21.43(a) does not wholly exempt defendants from control of the Board—the standard required for exemption from subchapter G. Article 21.-43(a) does, however, incorporate Articles 1.14–1 and 1.14–2 of the Insurance Code thereby raising the possibility that those statutes may provide the exemption defendants seek.

Article 1.14–2 deals specifically with surplus lines insurers. Article 1.14–2 when read with Art. 1.14–1 establishes the status of surplus lines insurers within the insurance regulatory scheme of Texas. Pursuant to those statutes, the transaction of insurance business by an unlicensed, and therefore unauthorized, insurer is prohibited except with regard to surplus lines insurance issued in strict compliance with Art. 1.14–2.

Section one of Art. 1.14–2 expressly states its purpose: "that [the] transaction of surplus lines insurance is a subject of concern and that it is necessary to provide for the regulation, taxation, supervision and control of such transactions...." Tex. Ins.Code Ann. art. 1.14–2 § 1 (Vernon 1981). Section 9 of Art. 1.14–2 deals with the validity of surplus lines insurance con-

tracts and subjects such contracts to the same rules of construction and interpretation as apply by law to all other valid insurance contracts.[1] Article 1.14–2 clearly regulates the surplus lines insurance business, and, therefore, does not provide the statutory exemption from control of the Board necessary to remove Lloyds from the scope of Art. 3.70–7.

Looking further for a statute that would exempt defendants from Art. 3.70–7, the Court turns to chapter 18 of the Texas Insurance Code, which deals specifically with Lloyds. Article 18.23 states in pertinent part:

> Underwriters at a Lloyds' shall be exempt from the operation of all insurance laws of this State except as in this Chapter specifically provided, or unless it is specifically so provided in such other law that same shall be applicable.

Tex.Ins.Code Ann. art. 18.23 (Vernon 1981). As noted above, Art. 3.70–1 specifically lists Lloyds as one of the organizations to which subchapter G of the Insurance Code, including Art. 3.70–7 applies. The Court concludes from these two sections that the Texas legislature clearly intended to exempt Lloyds from certain provisions of the insurance code but that Art. 3.70–7 was not one of them.

Taking all of the above-mentioned sections of the Insurance Code together, the Court concludes that the Texas legislature meant Art. 3.70–7 to apply to individual accident and sickness insurance policies issued by Lloyds regardless of whether such policies are surplus lines contracts.

### Policy Subparagraph Subject to Article 3.70–7

■ Finally, defendants contend that even if they are within the scope of subchapter G, Art. 3.70–7 does not apply to the disputed provision in Barns' contract. The Court disagrees.

The Texas Supreme Court has construed Art. 3.70–7 to apply to provisions other

---

1. Section 9(a) states:

   Insurance contracts procured as surplus line coverage from unauthorized insurers in accordance with this Article shall be fully valid and enforceable as to all parties, and

   shall be given recognition in all matters and respects to the same effect and extent as like contracts issued by authorized insurers.

   Tex.Ins.Code Ann. art. 1.14–2 § 9(a) (Vernon 1981).

than age limits. *Bomar v. Trinity National Life & Accident Insurance Co.*, 579 S.W.2d 464 (Tex.1979). In *Bomar* the court held that Art. 3.70–7 nullified a provision in a major medical policy that purported to terminate coverage of the insured's child upon the child's marriage. The court held that "[t]he policy limitation upon marriage necessarily presupposes a date after which the coverage will no longer be effective." *Id.* at 465. The court, therefore, applied Art. 3.70–7 to the limitation and nullified it.

This Court is of the opinion that the language of the insurance policy in this case, that the policy "shall be deemed cancelled from said date of the signing" of a contract for professional football, likewise presupposes a date after which the coverage will no longer be effective. The policy language in this case is legally indistinguishable from that in *Bomar*. The Court, therefore, holds that the subparagraph of the policy in issue here is invalid as a matter of law.

SO ORDERED.