783 P.2d 261

**REM CONSTRUCTION, INC., an Arizona corporation, Petitioner,**

v.

**The Honorable Margaret HOUGHTON, a Judge for the Superior Court of the State of Arizona, County of Pima, Respondent,**

and

**BRUCE GREER CONSTRUCTION, INC., an Arizona Corporation; and City of Tucson, an Arizona municipal corporation, Real Parties in Interest.**

**No. 2 CA–SA 89–0116.**

Court of Appeals of Arizona, Division 2, Department A.

Oct. 17, 1989.

Lewis and Roca by Susan M. Freeman, John M. Iurino and David J. Cantelme, Tucson, for petitioner.

Slutes, Sakrison, Even, Grant & Pelander by Tom Slutes, Tucson, for real party in interest Bruce Greer Const., Inc.

Tucson City Attorney's Office by Norbert W. Ludwig, Tucson, for real party in interest City of Tucson.

## OPINION

HATHAWAY, Judge.

This special action requires us to determine whether a surplus line insurer issuing bid, payment and performance bonds is "an insurer authorized to transact a surety business in this state" within the meaning of A.R.S. § 20–1531 and "a surety company ... duly authorized to do business in this state" within the meaning of A.R.S. § 34–222(C). For the reasons set forth below, we accept jurisdiction, but deny relief.

The relevant facts are undisputed. On June 8, 1989, the City of Tucson issued an invitation for bids for a public construction project designated as the Cushing Street drainage improvement project. Petitioner REM Construction, Inc. ("REM") submitted a bid in response in the amount of $1,589,860. Real party in interest Bruce Greer Construction, Inc. ("Greer") submitted the lowest bid in the amount of $1,536,971 and was awarded the contract. Greer's bid was accompanied by a bid bond issued by Southern American Insurance Company, a surplus line insurer. Upon award of the contract, Southern American also issued payment and performance bonds for Greer.

REM filed a timely protest, arguing that Greer's bid was materially non-responsive because it was submitted with a bid bond issued by an unauthorized insurer. As the second-lowest responsive and qualified bidder, REM argued, it should therefore be awarded the contract. The City rejected REM's protest and affirmed the award to Greer. REM then filed a special action in superior court, and by stipulation the par-

ties agreed that the City would not execute the contract with Greer until resolution of the issue by the trial court. Following hearings, the trial court denied relief, finding that the bonds submitted by Greer "satisfy the intent of the statutes," that the City had, in any event, waived any "irregularities" and that it was "in the public interest to proceed with the contracts as awarded." This special action followed.

■ Special action is the appropriate mechanism for review of these proceedings. As Division One of this court noted in *Western Sun Contractors Co. v. Superior Court*, 159 Ariz. 223, 227, 766 P.2d 96, 100 (App.1988):

Thus, it is apparent that an appeal, if a stay were issued, would delay the public work with an increase in cost, and that, if no stay were issued, the completion of the work would moot any relief. Either scenario would prevent an appeal from providing an adequate remedy.

We therefore accept jurisdiction.

■ REM argues that Greer's bid was materially non-responsive because it was submitted with a bid bond[1] issued by a surplus line insurer which, it contends, is an unauthorized insurer. REM also challenges the sufficiency of the payment and performance bonds on the same ground. A.R.S. § 20–1531 provides in pertinent part:

When any bond, recognizance or undertaking is required or permitted to be made for the security or protection of any person or municipality, the state, or any department thereof, or organization, conditioned for the doing or not doing of anything therein specified, any such board, court, organization or officer required or permitted to accept or approve the sufficiency of the bond, recognizance or undertaking, may accept and approve it when executed, or when the conditions thereof are guaranteed, solely by an insurer authorized to transact a surety

---

1. All proposals for construction of public works are required to be accompanied by a certified check, cashier's check or surety bond. A.R.S. § 34–202(A).

business in this state in accordance with the requirements of this title.

. . . . .

Moreover, A.R.S. § 34–222(C) requires that payment and performance bonds be executed "by a surety company or companies duly authorized to do business in this state."

A.R.S. § 20–206(A) provides that "[n]o person shall act as an insurer and no insurer shall transact insurance in this state except as authorized by a subsisting authority granted to it by the director [of the Department of Insurance], *except as to such transactions as are expressly otherwise provided for in this title.*" (Emphasis supplied.) An insurance company is prohibited from transacting insurance business in this state without a certificate of authority issued by the director. A.R.S. § 20–401.01(A). This prohibition does not extend, however, to "[t]he lawful transaction of surplus lines insurance." A.R.S. § 20–401.01(B)(1).

Surplus line insurance is defined as "[a]ny portion or all of an insurance coverage which cannot be procured from authorized insurers...." A.R.S. § 20–407. Such coverage may be obtained from "unauthorized" insurers subject to certain conditions set forth in § 20–407.[2] Of critical importance in this case is § 20–410, which provides:

> Insurance contracts procured as surplus line coverage from unauthorized insurers in accordance with this article shall be fully valid and enforceable as to all parties, *and shall be given recognition in all matters and respects to the same effect as like contracts issued by authorized insurers.*

(Emphasis supplied.)

REM argues that, because § 20–1531 was in effect when the provisions pertaining to surplus line insurance were enacted as part of the 1954 revisions to the insurance code and was neither repealed nor amended by the legislature, it was the intent of the legislature that surety bonds be issued only by "authorized" insurers. This requirement was reaffirmed by the legislature, REM contends, when it enacted § 34–222 as part of the Little Miller Act in 1969. Laws 1969, ch. 52, § 11(D). Moreover, § 20–410 merely gives "recognition" to surplus line insurance contracts, which is not the same as being "authorized" within the meaning of A.R.S. §§ 20–1531 and 34–222(C).

The difficulty with REM's construction of the statutes is that it renders § 20–410 meaningless. The validity of insurance contracts issued by "unauthorized" insurers is previously affirmed in § 20–402(A). Were this the only purpose of § 20–410, it would be mere surplusage. Further, REM's interpretation of § 20–410 gives no meaning whatsoever to the broad language of its final clause. We believe the only reasonable interpretation of this language is that surplus line contracts issued in conformity with the requirements of §§ 20–407 through 20–409 are to be treated as contracts issued by authorized insurers. Such a construction eliminates any ambiguity or conflict with §§ 20–1531 and 34–222.

In support of its contention that surplus line carriers are not "authorized" insurers, REM relies on four cases from other jurisdictions dealing with the issue of whether state guarantee funds are subject to claims by an insured who has suffered a loss due to the insolvency of a surplus line carrier. *See Villagonza v. Hawaii Ins. Guar. Ass'n,* 772 P.2d 1193 (Haw.1989); *Adams v. Illinois Ins. Guar. Fund,* 85 Ill.App.3d 867, 41 Ill.Dec. 140, 407 N.E.2d 638 (1980); *Osborne v. Edison,* 211 N.W.2d 696 (Iowa 1973); *Railroad Roofing & Building Supply Co., Inc. v. Financial Fire & Cas. Co.,* 85 N.J. 384, 427 A.2d 66 (1981). Resolution of this issue, which is not before us, requires consideration of different statutes and different policies. Whether or not our courts would reach the same conclusion as those in the cited cases, we cannot ignore the plain language of § 20–410 as it applies to the case at hand.

REM argues at length that such a construction cannot have been intended by the

---

**2.** No issue is raised as to whether those conditions were met in this case.

legislature because of the risk posed by permitting public construction projects to be bonded by companies which are not subject to regulation by the state. This is an argument more properly addressed to the legislature. In our view the statutory language which the legislature has chosen to employ permits but one conclusion: that surplus line contracts issued in accordance with the statutory requirements shall be treated as though they had been issued by an authorized insurer. Accordingly, the trial court correctly denied REM's petition for special action.

In view of our disposition, we need not address the other issues raised by REM. The order of the trial court is affirmed.

ROLL, P.J., and HOWARD, J., concur.