646 A.2d 1087

**MEADOWLARK INSURANCE COMPANY**

**v.**

**INSURANCE COMMISSIONER OF the STATE OF MARYLAND.**

**No. 1716, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Sept. 1, 1994.

380

Henry R. Abrams (Nancy S. Grodin and Weinberg and Green, on the brief), Baltimore, for appellant.

Christina Beusch (Dennis W. Carroll, Asst. Atty. Gen., on the brief), Baltimore, for appellee.

Argued before WENNER, BLOOM and MURPHY, JJ.

MURPHY, Judge.

Meadowlark Insurance Company, appellant, a Dominican Republic corporation, petitioned the Insurance Commissioner, appellee, for

> a declaratory ruling construing §§ 208, 209, and 211A(h) of the Insurance Code that an unauthorized insurer (i) may lawfully insure, but not solicit, risks resident, located or to be performed within this State if contacted independently by the prospective insured, and (ii) may lawfully solicit and insure risks resident, located or to be performed within this State if the prospective insured is an "industrial insured" as defined in § 211A(h).

On February 2, 1993, appellee issued the following declaratory ruling:

> [N]one of the provisions of subtitle 14 affirmatively grant to an unauthorized insurer permission to enter this State and write business without having obtained a certificate of authority. This conclusion is based upon several factors, among them the wording of § 211A, which states that "[t]he provisions of *this subtitle* shall not apply to "certain transaction, including the issuance of insurance contracts to industrial insureds. (emphasis supplied). The provisions of subtitle 14 do nothing more than provide the Commissioner with a means of enforcing the insurance laws against individuals and entities located outside the jurisdiction. The subtitle establishes a method of alternative service upon

unauthorized insurers, defines those acts which are to be construed as the "business of insurance" in Maryland and requires that reports be filed with the Commissioner and premium taxes paid. The exemptions found in § 211 do nothing more than release the unauthorized insurer from these provisions, but do nothing to alter the requirement, found in subtitle 3 of the Insurance Code, that a certificate of authority be obtained. To the extent an insurer falls within a § 211A exemption, it need not pay the 3% tax rate; it is not subject to alternative service by the Insurance Commissioner or by Maryland citizens; and it is not subject to the penalties set out in § 210. It is not, however, relieved of the obligation to obtain a certificate of authority prior to engaging in any of the acts defined as the "business of insurance" in § 203(a).

.... [S]ubtitle 14 was enacted to "provide methods for substituted service of process upon such persons or insurers in any proceeding, suit or action in any court and substitute service of any notice, order, pleading or process upon such persons or insurers in any proceeding before the Commissioner to enforce or effect full compliance with the insurance and tax statutes of the State...." Because an "industrial insured" is generally a large, sophisticated corporate purchaser, it has the ability to seek enforcement of the insurance contract, if necessary, in the unauthorized carrier's place of business and may not look to the State of Maryland for assistance.

The industrial insured remains subject to the 3% tax rate. Exempting the carrier from the provisions of subtitle 14 does not exempt it from the remaining provisions of Article 48A, including § 42's requirement that an insurer obtain a certificate of authority before engaging in the insurance business in this State. Accordingly, the industrial insured must find its unauthorized insurance outside of Maryland and must negotiate and purchase that insurance outside of Maryland. It may not be solicited in this State without running afoul of the requirements of § 42.

\* \* \* \* \* \*

.... If Meadowlark's arguments were accepted, any unlicensed entity not under the jurisdiction of the Insurance Commissioner would be permitted to enter the State of Maryland and solicit any one of numerous large companies for insurance coverage. Many of the protections afforded to Maryland residents by the licensing requirement and concomitant financial, reporting and other regulatory provisos, would be lost. This would be an absurd reading of § 211A....

I further conclude that no violation of Maryland's insurance laws occurs when a consumer leaves the State of Maryland and negotiates, purchases and receives a contract of insurance outside the boundaries of this State. So long as the unauthorized carrier performs none of the acts set forth in § 203(a), then it is not doing an insurance business in the State and need not be licensed here.... Section 209 does not constitute authorization for an unauthorized insurer such as Meadowlark to enter the State and conduct the business of insurance without having obtained a certificate of qualification.

Appellant requested that the Circuit Court for Baltimore City (1) reverse the Insurance Commissioner's declaratory ruling, and (2) modify the Insurance Commissioner's decision and "issue a declaratory ruling construing §§ 208, 209, and 211A(h) of the Insurance Code that an unauthorized insurer (i) may lawfully insure, but not solicit, risks resident, located or to be performed within this State if contacted independently by the prospective insured, and (ii) may lawfully solicit and insure risks resident, located or to be performed within this State if the prospective insured is an 'industrial insured' as defined in § 211A(h)."

The Honorable David Ross determined that

the Commissioner was correct that the sections relied upon [by] the appellant are contained in Subtitle 14 and clearly on any plain reading limits the exemption ... from the subtitle, and the purpose of the subtitle is set forth in Section 202 within that subtitle. The purpose is to subject certain

persons and insurers to the jurisdiction of the Commissioner. . . .

In this appeal from the decision of Judge Ross, appellant presents the following questions for our review:

I. Whether the trial court erred in holding as a matter of law that to independently procure insurance from an unauthorized insurer, the insured must purchase and receive the contract of insurance outside of Maryland and all of the acts described in Section 203(a) of the Code must take place outside of Maryland.

II. Whether the trial court erred in holding as a matter of law an unauthorized insurer was prohibited from doing the business of insurance in this State with a Maryland "industrial insured."

Appellee's ruling was, in essence, a denial of appellant's request for permission to solicit insurance business in Maryland. For reasons set forth herein, we do not agree with everything in that ruling. We do hold, however, that appellant is not entitled to the declaratory ruling it requested. We shall therefore affirm the decision of the circuit court.

## I.

Article 48A, § 42(1) provides that

[n]o person shall act as an insurer and no insurer shall engage in the insurance business in this State except as authorized by a subsisting certificate of authority issued to it by the Commissioner, unless such transactions are expressly otherwise provided for in this article.

An authorized insurer is one "duly authorized, by subsisting certificate of authority issued by the Commissioner, to engage in the insurance business of [Maryland]." Md.Code (1957, 1991 Repl.Vol.), Art. 48A, § 7. An unauthorized insurer is "one not so authorized." *Id.* " 'Insurance Business' includes the transaction of all matters pertaining to a contract of insurance, both prior to and subsequent to the effectuation of

such a contract, and all matters arising out of such a contract or any claim thereunder." Art. 48A, § 8.

Article 48A, § 43 provides:

A certificate of authority shall not be required of an insurer with respect to the following:

(1) Transactions relative to its policies lawfully written in Maryland . . . all as resulting from its former authorized operations in Maryland.

(2) Transactions subsequent to issuance of a policy covering only subjects of insurance not resident, located, or expressly to be performed in Maryland at the time of issuance, or covering property in the course of transportation . . . from or through Maryland . . . and which coverage was lawfully solicited, written, and delivered outside Maryland.

(3) Transactions pursuant to surplus lines coverages lawfully written pursuant to Subtitle 13 of this article.

(4) Reinsurance transactions, except as to domestic reinsurers.

Article 48A, Subtitle 14, entitled "Unauthorized Insurers," was enacted

to subject certain persons and insurers to the jurisdiction of the Commissioner, in proceedings before the Commissioner, and to the courts of this State in suits by or on behalf of the State and insureds or beneficiaries under insurance contacts. The General Assembly declares that it is a subject of concern that many residents of this State hold policies of insurance issued by persons and insurers not authorized to do insurance business in this State, thus presenting to such residents the often insuperable obstacle of asserting their legal rights under such policies in forums foreign to them under laws and rules of practice with which they are not familiar. The General Assembly . . . is also concerned with the protection of residents of the State against acts by persons and insurers not authorized to do an insurance business in this State, by the maintenance of fair and honest insurance markets, by protecting the premium tax revenues

of this State, by protecting authorized persons and insurers, which are subject to strict regulation, from unfair competition by unauthorized persons and insurers and by protecting against the evasion of the insurance regulatory laws of the State.

Art. 48A, § 202.  According to § 203(a):

(a) Any of the following acts in this State, effected by mail or otherwise, is defined to be doing an insurance business in this State.  The venue of an act committed by mail is at the point where the matter transmitted by mail is delivered and takes effect:

(1) The making of or proposing to make, as an insurer, an insurance contract.

(2) The makings of or proposing to make, as guarantor or surety, any contract of guaranty or suretyship as a vocation and not merely incidental to any other legitimate business or activity of the guarantor or surety.

(3) The taking or receiving of any application for insurance.

(4) *The receiving or collection of any premium, commission, membership fees, assessments, dues or other consideration for any insurance or any part thereof.*

(5) The issuance or delivery of contracts of insurance to residents of this State or to persons authorized to do business in this State.

\*       \*       \*       \*       \*       \*

(7) The doing of any kind of insurance business specifically recognized as constituting the doing of an insurance business within the meaning of the statutes relating to insurance.

(8) The doing or proposing to do any insurance business in substance equivalent to any of the foregoing in a manner designed to evade the provisions of the statutes.

(9) Any other transactions of business in this State by an insurer.

(Emphasis added).

On the other hand, the following transactions do not constitute "insurance business:"

(1) The lawful transaction of surplus lines insurance, as authorized in Subtitle 13.

(2) The lawful transaction of reinsurance by insurers.

(3) Transactions in this State involving a policy lawfully solicited, written, and delivered outside of this State covering only subjects of insurance not resident, located, or expressly to be performed in this State at the time of issuance, and which transactions are subsequent to the issuance of such policy.

(4) *Transactions involving contracts of insurance independently procured through negotiations occurring entirely outside of this State which are reported and on which premium tax is paid in accordance with § 209 of this article.*

(5) Attorneys acting in the ordinary relation of attorney and client in the adjustment of claims or losses.

(6) Transactions in this State involving group or blanket insurance or group annuities where the master policy of such group was lawfully issued and delivered in a state in which the insurer was authorized to engage in insurance business, unless otherwise determined by the Commissioner.

Art. 48A, § 203(b) (emphasis added).

■ Although the term "negotiations" is not defined in the statute, the Court of Appeals has repeatedly defined it to include all acts by the parties preliminary to, and in pursuit of, the formation of a contract, *e.g.*, solicitation, bidding, or proposing a contract. *Mann v. White Marsh Properties, Inc.*, 321 Md. 111, 117, 581 A.2d 819 (1990); *Traylor v. Grafton*, 273 Md. 649, 669, 332 A.2d 651 (1975); *MacWilliams v. Bright*, 273 Md. 632, 634, 331 A.2d 303 (1975). Those acts done after

a contract has been negotiated and agreed upon (*e.g.,* delivery of the contract, the filing and handling of claims, payment of premium) are clearly not "negotiations." We hold that where a contract has been negotiated entirely outside of Maryland, the transaction is not "doing an insurance business," and any subsequent act done in Maryland to perform that contract will not then convert it into an "insurance business" transaction.

■ We hold that appellee cannot prohibit appellant from entering into insurance contracts with Maryland insureds that are provided for by and that are in full compliance with all of the requirements found in Art. 48A, § 203(b)(4). The negotiations for any such contract, of course, must be conducted entirely and exclusively outside of Maryland. We are persuaded that the language "entirely outside of this State" must be interpreted in a way that is consistent with the important public policy interests served by the insurance code.

■ A contract that has been negotiated entirely outside of Maryland does not become a transaction of insurance business under § 203(a) merely because subsequent performance under the contract occurs in Maryland. To be exempt, however, *every* aspect of negotiation must occur *outside* of Maryland. If the contract at issue has been preceded by *any* communication (*e.g.,* letters, phone calls, telegrams, facsimile transmissions, short wave radio, etc., etc.), either originating from Maryland or received in Maryland, by (1) the insurer, (2) the insured, or (3) anyone else involved in the process of obtaining that insurance policy, it is not entitled to an exemption under 203(b)(4).

## II.

■ Appellant contends that it is entitled to conduct insurance business in the state with "industrial insureds." We disagree.

§ 211A, entitled "Exemptions from subtitle" provides in pertinent part:

The provisions of this *subtitle shall not apply* to the following:

\* \* \* \* \* \*

(h) To any insurance company or underwriter issuing contracts of insurance to industrial insureds. For the purposes of this section an "industrial insured" is defined to be: (1) an insured who procures the insurance of any risk or risks by use of the services of a full-time employee acting as an insurance manager or buyer or the services of a regularly and continuously retained qualified insurance consultant, or (2) an insured whose aggregate annual premiums for insurance on all risks total at least $100,000 or (3) an insured having at least twenty-five full-time employees. Notwithstanding the provisions of this subsection, industrial insureds shall be subject to the premium tax payment requirement of § 208 of this subtitle, and the reporting requirements of § 209 of this subtitle.

(Emphasis added).

We conclude that this exemption applies only to subtitle 14, and does not exempt industrial insureds from regulations that appear in other subtitles of the insurance code. *Smith v. Lloyd's of London,* 326 Md. 600, 609–610, 606 A.2d 273 (1992). Industrial insureds are exempt from the substituted service of process procedures for unauthorized insurers. Insureds meeting any of the three requirements in 211A(h) are large enough to seek enforcement of the insurance contract in the insurer's domicile state.

Had the legislature determined that insurance contracts issued to industrial insureds should be excluded from those acts defined as insurance business by § 203(a), the language found in § 211A(h) would surely have been inserted in § 203(b). Had the legislature intended to exempt every industrial insurer from the certificate of authority requirement, such an exemption would surely have been inserted in § 43. We are persuaded that unauthorized insurers—whether "industrial" or not—are subject to regulation under Article 48A for any "insurance business" they conduct in this state. See

**390**

*Lincoln Ins. v. Insurance Comm'r,* 328 Md. 65, 71–72, 612 A.2d 1301 (1992).

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY THE APPELLANT.**